UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMANDA B.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C20-1377-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by improperly evaluating medical evidence, by discounting her testimony, and by posing an incomplete hypothetical to the VE. (Dkt. # 19.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1970, has at least a high school education, and has no past relevant work. AR at 28. Plaintiff applied for benefits in February 2016, alleging disability as of September 1, 2012. *Id.* at 16. Plaintiff's application was denied initially and on reconsideration.

ORDER - 1

The ALJ held a hearing in January 2018, taking testimony from Plaintiff and a vocational expert. *See id.* at 37-62. In July 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 133-51. The Appeals Council remanded the decision, finding the ALJ considered medical evidence "not belong[ing] to the claimant." *Id*. at 154. A different ALJ held a hearing in March 2020, taking testimony from Plaintiff and a vocational expert. *See id.* at 63-100. In April 2020, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 13-36. In relevant part, the ALJ found Plaintiff's severe impairments of spinal impairments, hypertension, hyperthyroidism, sleep apnea, obesity, depressive disorders, anxiety disorders (including post-traumatic stress disorder), and substance use disorder limited her to light work subject to a series of further limitations. *Id.* at 19-20. Based on vocational expert testimony the ALJ found Plaintiff could perform light jobs found in significant numbers in the national economy. *Id.* at 28-29. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-6. Plaintiff appealed this final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Evidence

A treating doctor's opinion is generally entitled to greater weight than an examining doctor's opinion, and an examining doctor's opinion is entitled to greater weight than a non-examining doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the contradicted opinion of a treating doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

*1. Examining Psychologist David Widlan, Ph.D.*

Dr. Widlan examined Plaintiff in February 2020 and opined she "suffers from chronic emotional difficulties secondary to a long history of childhood sexual trauma. She is prone to hyperstartle response, vigilance, and intrusive thoughts. She is prone to panic attacks as well as chronic depression. She experiences alterations in mood and judgment, particularly during periods of moderate stress. Her prognosis is poor. Despite extensive counseling her symptoms have remained entrenched." AR at 2605. He further opined, based in part on the mental status examination he administered, she has "deficits in concentration and social reasoning," "cannot persist with adequate pace," "would become easily overwhelmed by task demands," cannot "consistently negotiate simple social stressors on a routine basis," "would be prone to agitation

and potentially paranoia," "likely has significant deficits in ADLs outside of a basic routine," "is not able to accept appropriate supervisor criticism," and "would be prone to an intensification of her symptoms" even "if she was limited to simple, repetitive tasks." *Id*. at 2606.

The ALJ first discounted Dr. Widlan's opinion as inconsistent with "longitudinal findings" and "treatment records documenting adequately stable psychological impairments." AR at 27. Contending this was error, Plaintiff points to numerous pages in the record documenting Plaintiff's psychological symptoms between 2016 and 2020. (*See* Dkt. # 19 at 5-7.) The Commissioner counters Plaintiff "simply disagrees with how the ALJ assessed this conflicting evidence." (Dkt. # 20 at 4.) The Commissioner's argument – and the ALJ's evaluation of the record – is contrary to well-settled precedent that, in the mental health context, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.") (internal citation omitted); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Substantial evidence does not support the finding that Plaintiff's psychological impairments were "adequately stable." Rather, the record reflects Plaintiff presented over the

ORDER - 4

years with psychological symptoms of varying intensity. *See*, *e.g.*, AR at 509 (August 27, 2015 HAM-D score indicating "moderate depression"); *id.* at 511 (January 13, 2016 assessment indicating "depression symptoms include a marked decrease in motivation"); *id.* at 2276 (November 28, 2018 treatment note indicating Plaintiff "presented as tearful and dysregulated to multiple stressors with children"); *id.* at 2221 (June 3, 2019 treatment note indicating Plaintiff feels "overwhelm[ed] and helpless[]"); *id.* at 2203 (July 22, 2019 treatment note indicating Plaintiff stated, "I want to die and go to heaven where it's peaceful"); *id.* at 2589 (February 24, 2020 treatment note indicating Plaintiff is "feeling overwhelmed and anxious"). The ALJ accordingly erred by discounting Dr. Widlan's opinion on this ground.

The ALJ also discounted Dr. Widlan's opinion as inconsistent with Plaintiff's "consistent reports of maintaining a schedule of childcare activities that include driving them to school and appointments thorough [sic] the week, performing household chores and shopping on a reliable basis, and reading when she has time for herself." AR at 27. However, the ALJ's finding that Plaintiff engaged in childcare activities is not, in this context, a valid reason to discount Dr. Widlan's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) ("[T]he record provides no details as to what Trevizo's regular childcare activities involved. The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations[.]"). Indeed, the record indicates Plaintiff's childcare activities overwhelmed her and one of her therapy goals was to "[f]ight less with children" and "have a calm, loving home." AR at 2222; *see also id.* at 2215 (June 17, 2019 treatment note indicating Plaintiff "reports severely interrupted sleep and heightened levels of stress due to chronic crisis with adult children."); *id.* at 2595 (February 3, 2020 treatment note indicating

Plaintiff "got overwhelmed taking care of her kids"). Similarly, Plaintiff's minimal activity of reading is neither inconsistent with nor a valid reason to discount Dr. Widlan's opinion. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). The ALJ accordingly erred by discounting Dr. Widlan's opinion.

### 2. Mental Health Providers Heather Kranz, MA and Deborah Gaebler, ARNP

Ms. Kranz and ARNP Gaebler completed DSHS disability condition forms for Plaintiff in January 2018 and August 2018, respectively, and opined Plaintiff's "depression symptoms include a marked decrease in motivation and ability to carry out basic tasks." AR at 511, 1474. They further opined Plaintiff "has difficulty keeping appointments and completing jobs due to anxiety and feelings of worthlessness," has "problems concentrating and retaining information," and "is overwhelmed easily, at which point she will shut down and be unable to complete tasks that she was working on." *Id.*

The ALJ first discounted Ms. Kranz and ARNP Gaebler's opinions because they "made no references to objective evidence." AR at 26. This is not a valid ground to discount an opinion concerning mental impairments:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devises in order to obtain objective clinical manifestations of mental illness.

*Lebus v. Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981). The record indicates both opinions were based on clinical observations and does not indicate either provider found Plaintiff to be

ORDER - 6

untruthful. Therefore, this is no evidentiary basis for rejecting the opinions. *Cf. Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"). The ALJ accordingly erred by discounting the opinions on this ground.

The ALJ also discounted the opinions as inconsistent with the longitudinal record and Plaintiff's activities. AR at 26. Because the ALJ erred in rejecting Dr. Widlan's opinion on these grounds, as discussed above, he necessarily erred in relying on these grounds to discount the opinions of Ms. Kranz and ARNP Gaebler.

### 3. Examining Psychologist David Mashburn, Ph.D.

Dr. Mashburn examined Plaintiff in August 2015 and August 2019. In 2015, Dr. Mashburn opined Plaintiff had "marked" depression, moderate limits maintaining attendance, performing routine tasks, adapting to changes, making simple work-related decisions, and asking simple questions, and marked limits communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal workday/workweek. AR at 505-506. In 2019, Dr. Mashburn opined Plaintiff had "marked depression" and moderate limits making simple work-related decisions, communicating and performing effectively in a work setting, and completing a normal workday/workweek. *Id*. at 2546-47.

The ALJ discounted Dr. Mashburn's opinions as inconsistent with the longitudinal record and Plaintiff's activities. AR at 26. Because the ALJ erred in rejecting the opinions of Dr. Widlan, Ms. Kranz, and ARNP Gaebler on these grounds, as described above, he necessarily erred in relying on these grounds to reject Dr. Mashburn's opinions.

### 4. State Agency Consultants Renee Eisenhauer, Ph.D. and Steven Haney, M.D.

In their assessment of Plaintiff's medical records, Drs. Eisenhauer and Haney reviewed the evaluations of Jason Davis, PA-C and Christina Diamonti, Psy.D. *See* AR at 104, 121. The Appeals Council previously indicated, however, Mr. Davis and Dr. Diamonti's records "did not belong to the claimant and have been removed from this claimant's medical evidence of record." *Id*. at 154. The Appeals Council instructed the ALJ to "rely[] only on evidence belonging to the claimant." *Id.* Nevertheless, the ALJ erroneously gave "significant weight" to the opinions of Drs. Eisenhauer and Haney, who opined Plaintiff "could understand and concentrate on routine repetitive instructions, with the ability to sustain a normal workweek even with the effects of substance abuse" and "work with predictable work routine changes." *Id*. at 27. The Commissioner argues "the ALJ credited Dr. Eisenhauer and Haney's opinions because they were consistent with the evidence the ALJ discussed—not because they considered Dr. Diamonti and PA-C Davis's opinion." (Dkt. # 20 at 3.) However, the ALJ did not explicitly disclaim that he walled off Mr. Davis and Dr. Diamonti's records, and the Court is not in a position to factually determine whether or to what extent these records informed any part of the ALJ's decision. Because, at bottom, the ALJ relied upon medical records of another claimant, the ALJ harmfully erred.

### 5. Evidence Relating to Sleep Apnea

The ALJ found the medical record "document[s] adequately controlled sleep apnea[.]" AR at 22. Plaintiff argues the ALJ erred by failing to mention an October 2019 chart note. (Dkt. # 19 at 7-8.) The October 2019 chart note, which assessed "[c]omplex sleep apnea" and "[s]evere obstructive sleep apnea," indicates abnormal results during the periods of April 2019 – May 2019 and August 2019 – October 2019, AR at 2569-70. However, this singular piece of the

record does not undermine the ALJ's longitudinal assessment that Plaintiff failed to comply with her CPAP treatment, notwithstanding its benefit. *Id.* at 22 ("Her complaints of severe fatigue are incompatible with her non-compliance with beneficial treatment for sleep apnea.… In September 2018, although she reported no significant benefit from ongoing CPAP therapy, data from her machine found a normal AHI of less than five events per hour."); *see Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Plaintiff invites a different reading of the record, but fails to demonstrate the ALJ unreasonably interpreted it. The ALJ accordingly did not err in assessing Plaintiff's sleep apnea.

### B. The ALJ Erred by Discounting Plaintiff's Testimony

The ALJ found Plaintiff presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged and made no finding she was malingering. AR at 21. The ALJ was thus required to provide "specific, clear, and convincing" reasons supported by substantial evidence to discount Plaintiff's testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). Plaintiff contends the ALJ erroneously discounted Plaintiff's testimony concerning her mental impairments. (Dkt. #19 at 2, 8-10.)

The ALJ first discounted Plaintiff's testimony as inconsistent with the medical record. *Id.* at 21-23. However, because the ALJ erred in assessing critical medical evidence, as discussed above, this is not a valid ground to discount Plaintiff's testimony. The ALJ also discounted Plaintiff's testimony as inconsistent with her childcare activities. *Id.* at 23-24. As discussed

above, the ALJ did not sufficiently develop the record with respect to Plaintiff's caretaking of her children. Further, the other minimal activities the ALJ cites, such as reading, do not undercut Plaintiff's claims. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). The ALJ accordingly erred by discounting Plaintiff's testimony.

**C. Scope of Remand**

This case must be remanded because the ALJ harmfully misevaluated the medical evidence and Plaintiff's testimony.[1] Plaintiff contends the Court should remand for an immediate award of benefits. Such a remand should be granted only in a rare case and this is not such a case. The medical opinions and Plaintiff's testimony must be reweighed and this is a function the Court cannot perform in the first instance on appeal. Further proceedings are thus not only helpful but necessary.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C.

---

[1] Because the ALJ misevaluated the medical evidence and Plaintiff's testimony, the ALJ will necessarily need to determine whether the RFC needs to be adjusted. For this reason, the Court need not reach Plaintiff's assignment of error regarding vocational expert testimony. *See PDK Labs. Inc. v. DEA,* 362 F.3d 786, 799 (D.C. Cir. 2004) ("[I]f it is not necessary to decide more, it is necessary not to decide more.") (Roberts, J., concurring in part and concurring in the judgment).

ORDER - 10

§ 405(g). On remand, the ALJ shall reevaluate the opinions of Dr. Widlan, Ms. Kranz, ARNP Gaebler, and Dr. Mashburn, reassess Plaintiff's testimony, develop the record and redetermine the RFC as needed, and proceed to the remaining steps as appropriate.

Dated this 24th day of June, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge